**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------X

JOHN DOE,

               Plaintiff,

     -against-

RM MEDIA GMBH, BROOKWOOD HOSPITALITY LLC,
HILTON WORLDWIDE HOLDINGS INC, and JP MORGAN
CHASE BANK

               Defendants.

----------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

**23  CV  1234-S**

FILED
NOV 2 4 2023
UNITED STATES DISTRICT COURT
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

       Plaintiff John Doe files this complaint for damages and other relief under (among other provisions of law) the United States federal anti-sex trafficking statute, 18 U.S.C. § 1591, *et seq.*—the  Trafficking Victim Protection Act ("TVPA")—and for aiding and abetting,  intentional and negligent infliction of emotional distress, and negligence related to sexual offenses as defined in article one hundred thirty of the penal law, pursuant to the New York Adult Survivors Act, N.Y. CPLR §214-j. The suit arises from Defendant RM MEDIA GMBH, BROOKWOOD HOSPITALITY LLC, HILTON WORLDWIDE HOLDINGS, INC, and JP MORGAN CHASE BANK's participation and intentional involvement in a sex-trafficking operation, as well as the direct financial benefits they received therefrom. RM MEDIA knew that it was facilitating child sex trafficking on its online platforms, RENTMASSEUR.COM, and BROOKWOOD HOSPITALITY LLC, HILTON WORLDWIDE HOLDINGS, INC and JP MORGAN CHASE BANK all provided the accommodation and financial lifeblood for a 15 year old child sex trafficking victim, "James Roe," to pose as a qualified masseur. Upon information and belief, in reality, this masseur was a 15 year old sex trafficking victim, who used Hilton's hotels to traverse the country with no checks and balances against a child sex trafficking victim paying for and staying at its hotels, who used a JP Morgan bank account to receive regular payments for his work as a masseur as well as to pay RM Media GMBH thousands of dollars over at least a three year period for access to its website platform which operates in the State of New York, and who was a victim who, upon information and belief, provided massages

[1]

to 28 U.S.C. § 1367(a), because all claims alleged herein  are part of a uniform pattern and practice and form part of the same case or  controversy.

3. This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. § 1595, in which to bring this action. Venue is proper in  this District under 28 U.S.C. § 1391(b)(2), because RM Media, Brookwood Hospitality, Hilton Hotels Worldwide and JP Morgan all conducted substantial activities in this District and knowingly and/or recklessly aided and abetted, facilitated, and directly participated in an illegal child trafficking venture through actions that originated in this District.

4. A substantial part of the acts, events, and omissions giving rise to this  cause of action occurred in this District.

5. This action has been timely filed pursuant to 18 U.S.C. § 1595(c)(1),  which provides that a plaintiff shall have ten years after the cause of action arose to file suit against any person who knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known violated the laws against sex trafficking. This action is also timely because the conspiracy continues to this day. This action is also timely under New York's Adult Survivor's Act, N.Y. CPLR § 214-j.

## II. PARTIES

6. John Doe is a U.S. citizen and was at all relevant times a resident of  and domiciled in the State of New York.

7. Plaintiff John Doe is using a pseudonym to protect his identity  because of the sensitive and highly personal nature of this matter, which involves sexual assault.

8. John Doe is also at serious risk of retaliatory harm because the co-conspirators who participated in this child sex-trafficking venture had—and continue to possess—tremendous wealth and power and have demonstrated a clear ability to cause him serious harm.

9. John Doe's safety, right to privacy, and security outweigh the public interest in his identification.

10. John Doe's legitimate concerns outweigh any prejudice to Defendants by allowing him to proceed anonymously. As discussed below, many other victims are similarly situated to John Doe and 15 year old James Roe, who is both assailant and victim, and also need to proceed anonymously for

the same reasons. The identities of most of these other men and women are or can be known to Defendants.

11. Defendant RM Media is a global technology provider who hosts the website RENTMASSEUR.COM and conducts business in New York and in the United States.

12. Brookwood Hospitality LLC is a hospitality provider that manages that hotel where Plaintiff was assaulted in Erie County, New York.

13. Hilton Worldwide is a global real estate holding company that licenses its name and brand to Brookwood Hospitality LLC and receives financial benefit from such arrangement.

14. JP Morgan is a global financial institution headquartered in New York, New York. Defendant JP Morgan is licensed by the New York State Department of Financial Services to operate a foreign bank branch in the State of New York.

15. All Defendants currently conduct substantial business in this District and conducted substantial business at the time of events covered in this complaint.

16. All Defendant's activities, including the events alleged herein, were in and affecting interstate and foreign commerce. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate telephone communications.

17. All Defendants are responsible, under United States law and otherwise, for the acts of its officers, directors, employees, and agents, including the acts described in this complaint. The acts alleged were committed by all Defendant's officers, directors, employees, and agents were within actual and apparent scope of their employment and with the intention, at least in part, to benefit each Defendant.

## III. INTRODUCTION

18. RM Media's victims are users of its platform who believe that they are receiving the benefits of a relaxing massage, but who suffered abuse as these "masseurs" are actually sex-trafficking victims who remain loyal to the venture at all costs. Trafficking these victims, such as James Roe, require the assistance of a wide network of co-conspirators, including Brookwood Hospitality, Hilton Worldwide Holdingd and JP  Morgan bank.

[4]

19. This venture has everything a sex-trafficking organization needs—victims, funding, infrastructure, the appearance of legitimacy, and a reckless and/or complicit banking institution.

20. The RM Media sex-trafficking venture knowingly used means of fraud and abuse of law and the legal process, to cause John Doe, and many similarly situated users of its platform women to become victim to sex acts, and upon information and belief, benefited from James Roe and other victims' alleged engagement in commercial sex acts.

21. This sex-trafficking venture operates in and affects interstate and foreign commerce. RM media provided a platform for child sex trafficking victims, including James Roe, and others similarly situated, to engage in commercial sex acts in, among other places, New York (including the Western District of New York and the Southern District of New York), Colorado, California, and other U.S. and international territories.

22. Some significant time after Plaintiff reported the sexual assault to RM Media, RM Media posted a notice to its website about "Youth Protection" and assigned an employee to this insignificant concern for them.

23. RM Media claims it verifies the identities of all of its users, but allowed a 15 year old child to pose as an adult male masseur on its platform, to pay for access to the platform, to provide massages, erotic and otherwise to users of the platform, to, upon information and belief, receive financial payments for providing massages and upon information and belief receive payments for sexual contact with unwitting users of the website, and to traverse the United States and the world participating in such conduct.

24. Upon information and belief, without banking, infrastructure and digital support, this child-sex trafficking could not effectively operate, as all Defendants are responsible for facilitating and allowing recruited victims to receive money for the sexual abuse that it is alleged these victims suffer.

25. Brookwood Hospitality and Hilton Worldwide Holdings allowed a 15 year old child to reserve, book and shuttle guests through its hotel in Erie County and failed to, in 2020, provide the necessary safeguards and knowingly and/or recklessly ignored the warning signs that it was facilitating such heinous activity.

26. Upon information and belief, JP Morgan provides banking access to James Roe and has not yet flagged the account of a 15 year old child who makes abnormal and intermittent cash deposits

from his masseur services and, upon information and belief, sexual contact with victims around the country and around the globe. Upon information and belief, that JP Morgan's internal risk management procedures and controls allowed this activity to go unflagged, and that has enabled this instance of child sex trafficking shocks the conscience.

27. Upon information and belief, RM Media's expansion of sexual abuse and trafficking leads to unwitting users of its website paying sums of money to child sex victims for the abuse they suffer. After RM Media was made aware of the abuse by Plaintiff, it continued to allow James Roe access to its platform and continued to receive thousands of dollars from James Row in platform access fees. RM Media and other Defendants benefited financially from this child trafficking scheme.

## IV. THE TRAFFICKING VICTIMS PROTECTION ACT

28. The Trafficking Victims Protection Act (TVPA) outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial jurisdiction of the United States. It is to be construed broadly because it serves a remedial purpose and uses intentionally broad language.

29. The TVPA forbids, among other things, the following sex-trafficking conduct:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

30. The TVPA also forbids (among other things) conspiring to violate 18 U.S.C. § 1591. 18 U.S.C. § 1594(c).

31. The TVPA also contains an explicit "civil remedy" provision which allows an individual who is a victim of a violation of Chapter 77 of Title 18 (*e.g.*, violation of 18 U.S.C. §§ 1591–94) to bring a civil action against the perpetrator and any person or entity who knowingly benefits, financially or by receiving anything of value from participation in an illegal sex-trafficking venture. 18 U.S.C. § 1595(a).

32. Unlike the criminal penalties provisions in the TVPA, the civil remedies provision contains a "constructive knowledge" provision. This provision allows a civil action to be brought not only against a person or entity who participated in a venture known to have engaged in illegal sex trafficking but also against a person or entity who participated in a venture that the person or entity should have known had engaged in illegal sex trafficking. 18 U.S.C. § 1595(a). This expansive provision is known as the "constructive knowledge" provision, which provides an alternative to proving actual knowledge as part of civil damages claim.

33. In the paragraphs that follow, wherever John Doe alleges that Defendant acted with actual knowledge, or in reckless disregard of the fact, that the sex-trafficking venture used means of fraud, coercion, abuse of process, or some combination thereof to cause a person to engage in commercial sex acts, the Plaintiff also allege that, at a bare minimum, Defendant should have known that the sex-trafficking venture had used such means to engage in illegal sex trafficking in violation of 18 U.S.C. §§ 1591–94—*i.e.*, that they had constructive knowledge of the child sex trafficking. In this complaint, John Doe alleges that Defendants were willfully blind to the fact that they were facilitating and participating in a child sex-trafficking venture.

## V. FACTUAL ALLEGATIONS

### A. John Doe's use of RM MEDIA's digital masseur platform

34. On September 28th, John Doe chose a masseur at random who was listed on RM Media's website as located in the City of Buffalo and available to provide a massage. John Doe texted this

masseur inquiring about his availability for a massage using the phone number provided by RM Media's website.

35.  After a brief massage by James Roe, as Plaintiff lay on the bed in the fourth floor hotel room operated by Brookwood Hospitality and Hilton Worldwide Holdings, James asked Plaintiff to touch his nipples. Plaintiff replied he was not comfortable doing that. James then asked Plaintiff for a tip. When Plaintiff did not provide one, James sexually assaulted Plaintiff.

36.  A few weeks later, Plaintiff reported the sexual assault to the local police department, who told him a Special Victims detective would contact him. Plaintiff also reported the assault to the Hilton hotel. As of this writing, the hotel's management has not produced records, videographic evidence or cooperated with the detective. Further, Brookwood and Hilton claims neither cannot provide information regarding James Roe's' identity.

37.  Using online tools, Plaintiff cross-referenced photos of James Roe posted to RM Media's masseur website with various now-deleted social media accounts and discovered that James Roe was a 15 year old resident of the Bronx, New York at the time of the assault in September 2020.

38.  Plaintiff wrote to RM Media about the assault, and RM Media replied it would "look into it" but never responded. As of January 2023, James Roe continued to have an active account on RM Media, and upon information and belief, RM Media allowed him to delete and re-create various accounts to evade identification by Plaintiff.

39.  Defendants and co-conspirators have perfected a scheme for manipulation and abuse of children. Once abused, these victims would return to RM Media's platform and to the resources of Defendants and like conspirators to continue being victimized and subjected to sexual contact and abuse, to receive financial rewards for their victimization and ensure that the victim returned to the platform and leverage access to these resources without any checks or balances.

40.  To furnish unwitting users of its platform with massage services and, upon information and belief, contact of a romantic and/or sexual nature with children, RM Media recruited, solicited and enticed child victims to cause them to engage in commercial sex acts in ways that were in and affecting interstate and foreign commerce, including using means of interstate communications (such as cell phones) and means of interstate and foreign travel (such as aircraft).

**B. Consistent With Uniform Pattern and Practice, John Doe Was Forced to Engage in Commercial Sex Acts with James Roe by Means of Force, Fraud, and Coercion**

41. In a head turning series of events, and after a two and a half year investigation, John Doe discovered that he was sexually assaulted by a child sex trafficking victim in direct violation of Article 130 of New York's Penal Law, including but not limited to the following:

   a. Sexual misconduct as defined in §130.20, inasmuch as James Roe engaged in sexual contact with Plaintiff without Plaintiff's consent;

   b. Rape in the first degree as defined in §130.35, inasmuch as James Row engaged in sexual intercourse with Plaintiff by forcible\ compulsion;

   c. Forcible touching as defined in §130.52, inasmuch as James Roe, intentionally and for no legitimate purpose, engaged in the forcible sexual touching of Plaintiff for the purpose of degrading or abusing him or for the purpose of knowingly advancing on Plaintiff as a child to gratifying his own sexual desire or for the purposes of humiliation and degradation;

42. James Roe was also trafficked to other users of RM Media's platform, upon information and belief, a few of whom left reviews for James Roe.

43. RM Media fraud, coercion, abuse of process, and a combination of such means to cause John Doe to be assaulted and for James Row to engage in commercial sex acts.

44. RM Media caused James Roe to engage in commercial sex acts in ways that were in and affecting interstate and foreign commerce, including use of cell phones and means of interstate transportation.

45. RM Media enabled James Roe to travel from New York to other states to cause him to engage in commercial sex acts.

46. Upon information and belief, Defendants were caused to control James Roe financially, emotionally, and psychologically. Upon information and belief, RM Media used the promise of access to its platforms and payments for masseur services to allow child trafficking victims to engage in commercial sex acts.

47. In an attempt to locate his assailant, John Doe sent a tracking link by cell phone to the phone number James Row listed on his RM Media account. Through 2020, 2021, 2022 and 2023, James Roe remains active on RM Media's platforms. It is unknown if James Roe has yet reached the age of maturity in 2023. RM's conduct was and is outrageous and intentional.

## C. JP Morgan's Role in the Sex-Trafficking Venture

### 1. Banking laws and regulations exist to prevent funding of criminal ventures.

48. The Federal Bank Secrecy Act ("BSA") requires financial institutions to have adequate anti-money laundering ("AML") policies and systems in place. New York state law also requires financial institutions to devise and implement systems reasonably designed to identify and report suspicious activity and block transactions prohibited by law.

49. All regulated institutions are expected to configure systems based on their unique risk factors, incorporating parameters such as institution size, presence in high-risk jurisdictions, and the specific lines of business involved, and the institutions have an affirmative duty to ensure that their systems run effectively.

50. In addition to having effective AML controls in place, it is also necessary for financial institutions to monitor their customers for the purpose of preventing their customers from facilitating criminal activity using the institutions' facilities.

51. As part of preventing criminal activity, Know Your Customer ("KYC") and customer due diligence are critically important, and financial institutions must collect customer information at the time of establishing new relationships with clients, including as necessary to assess the risks associated with the client. To properly consider these risks, financial institutions must consider relevant factors such as the nature of the client's business, the purpose of the client's accounts, and the nature and duration of the relationship.

52. Financial institutions must also conduct KYC reviews for each client relationship at intervals commensurate to the AML risks posed by the client, including reviewing account activity to determine whether such activity fits with what would have been expected given the nature of the account. Each client's AML risk should also be re-assessed if material new information or unexpected account activity is identified.

53. Financial institutions must also establish criteria for determining when a client relationship poses too high of a risk and therefore must be terminated. A financial institution may be liable under applicable laws if it maintains such a relationship despite repeated indications of facilitation of improper transactions.

**2. JP Morgan directly participated in RM Media's child sex-trafficking venture.**

54. Upon information and belief, JP Morgan knowingly and/or recklessly participating in this child sex-trafficking venture by establishing and maintaining a banking relationship with James Roe and providing the financial underpinnings for 15 year old James Roe to have ready and reliable access to banking resources to facilitate and/or cause them to engage and sustain commercial sex acts and other degradations.

55. Specifically, upon information and belief, money was paid by interstate and international users of RM Media's website to child sex trafficking victims like James Roe and deposited into a JP Morgan account. Upon information and belief, money was also withdrawn from this JP Morgan account by RM Media and by James Roe in furtherance of the sex trafficking operation.

56. JP Morgan also deliberately failed to follow routine banking practices of review of underage accounts against the backdrop of the public information outing Jeffrey Epstein and other notorious figures as child sex traffickers. In allowing James Roe to remain banked, JP Morgan purposely, deliberately and/or recklessly failed to file required Suspicious Activity Reports ("SARs") for sporadic cash deposits from interstate locations and other suspicious activities of minor James Roe. In short, instead of providing ordinary and routine banking, JP Morgan failed to prevent these crimes.

57. For JP Morgan, a sophisticated financial institution legally responsible for complying with Know Your Customer laws and other banking obligations, the details of this child trafficking are horrific.

58. Upon information and belief, in 2009, one of notorious sex trafficker Jeffrey Epstein's sexual abuse victims served a subpoena on JP Morgan in connection with a civil case. JP Morgan refused to comply with the subpoena.

59. It is well known—and upon information and belief JP Morgan did know—that a large number of cash transactions by a customer can be an indicator of criminal activity generally and sex trafficking in particular.

60. Payments to victims of sex trafficking are often made in cash to avoid leaving a "paper trail" for law enforcement or other investigators to follow.

61. Forced sexual exploitation of victims has been estimated to generate  approximately $100 billion in yearly illicit profits, according to a recent study (2018)  by the Financial Action Task Force

entitled "Financial Flows from Human  Trafficking."

62. Given the illegal nature of sex trafficking, individuals perpetrating the crime, as well as laundering the proceeds of that crime, may be identifiable by  observing financial transactions and information obtained by financial institutions in  the course of conducting their customer due diligence and the behavior of offenders.

63. Upon information and belief, the techniques that financial institutions use to detect other criminal enterprises using their accounts can also be employed to detect sex trafficking.

64. Upon information and belief, an indicator of sex trafficking can be recurring payments for in the late night or early morning. A similar indicator can be significant payments for transportation or logistics (car rental, taxi, and ride sharing service transactions).

65. Upon information and belief, JP Morgan failed to conduct this basic inquiry. Instead, it chose to continue to financially benefit from its relationship with James Roe and upon information and belief, other sex trafficking victims.

66. Upon information and belief, by facilitating and financing commercial child sex acts in interstate and foreign commerce, JP Morgan earned interest, fees, and other financial benefits directly and knew or should have known about the activity in James Roe's bank account.

67. Upon information and belief, on violation of various banking laws and regulations, including various  "Know Your Customer" and anti-structuring laws, JP Morgan regularly authorized  cash withdrawals and deposits for the James Roe and the child sex-trafficking venture of which he was a victim, which allowed RM Media, Brookwood Hospitality, and Hilton Worldwide Holdings and to conduct the business of the  sex-trafficking venture.

68. Upon information and belief, among the young men and boys whose sex trafficking and sex abuse JP Morgan participated in, benefited from, aided and abetted, and furthered were James Roe, which was a direct causation of James Roe's sexual assault of Plaintiff John Doe.

## D. The Statute of Limitations

69. The statute of limitations under the TVPA is ten years after the cause of action arose, or ten years after the victim reaches eighteen years of age, if the victim was a minor at the time of the alleged offense. 18 U.S.C. § 1595(c)(1), (2).  RM Media's child sex-trafficking venture constituted

a criminal conspiracy and a sex-trafficking venture that has operated for at least three years beginning at least in September 2020. The conspiracy and venture undertook criminal actions in violation of the TVPA throughout those years, and after, thereby automatically bringing all actions in furtherance of the conspiracy  and venture within TVPA's statute of limitations.

70. The New York Adult Survivors Act has opened up a one-year revival window for the statute of limitations regarding intentional and negligent torts  connected to violations of the New York Penal Law Chapter 130. *See* New York  State, Governor Hochul Signs Adult Survivors Act, Governor Kathy Hochul (May  24, 2022), https://www.governor.ny.gov/news/governor-hochul-signs-adult-survivors-act ("For many survivors, it may take years to come to terms with the trauma of sexual assault and feel ready to seek justice.").

# VI. CAUSES OF ACTION
## COUNT I
### AIDING, ABETTING, AND FACILITATING BATTERY

71. Plaintiff John Doe realleges and incorporates by paragraphs 1 – 70,  as if fully set forth in this Count.

72. John Doe brings this Count individually and on behalf of the victims of RM Media and those institutions that enabled this child sex trafficking operation to begin and flourish.

73. In September 2020, James Roe intentionally committed batteries and other intentional tortious conduct,  including crimes in violation of New York Penal Law Chapter 130 such as New  York Penal Law §§ 130.20, 130.35, 130.50, 130.52, and 130.66 (hereinafter  "Chapter 130 crimes"), against John Doe. As described throughout this complaint, James ROw intentionally and non-consensually touched John Doe in a harmful and offensive manner that resulted in substantial injuries,  ncluding damages from physical and psychological injury, extreme emotional  distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of privacy.

74. The resulting injuries that John Doe suffered include injuries directly and proximately suffered as a result of sex offenses committed by James Roe and criminalized under article 130  of the New York Penal Laws. The offenses included sexual intercourse without  consent and sexual conduct without consent, forbidden by New York Penal Law  § 130.20. The offenses included forcible

touching of sexual or other intimate parts  without consent, forbidden by New York Penal Law §§
130.20, 130.35, 130.50,  and 130.52.

75. Regardless of when the tortious conduct (*e.g.*, battery) and Chapter 130 Crimes were committed
by James Roe, the conduct and crimes are now civilly actionable, regardless of any statute of
limitations to the contrary, because they are  covered by the one-year "look back" window in New
York Adult Survivors Act.  *See* N.Y. C.P.L.R. § 214-j.

76. Between about 2020 and 2023, RM Media, Brookwood Hospitality, Hilton Worldwide Holdings
and JP Morgan knowingly, intentionally and/or recklessly aided, abetted, and facilitated James
Roe's intentional tortious conduct (*e.g.*, battery), through Chapter 130 Crimes recounted in the
preceding paragraphs of this Count.  Because Defendants aided, abetted, and facilitated James
Roe's conduct and crimes in violation of Chapter 130, they are vicariously and otherwise liable for
damages  caused by the conduct and crimes.

77. In September 2020, when it was made aware of the sexual assault and provided no response,
RM Media was well aware of its important and substantial role as a part of James Roe's
intentionally tortious and illegal activity in committing Chapter 130  Crimes. When the crimes were
reported to Brookwood Hospitality LLC and Hilton Worldwide Holdings, Inc. they were well aware
of their important and substantial role as a part of James Roe's intentionally tortious and illegal
activity in committing Chapter 130  Crimes and took no action to assist Plaintiff or to cooperate
with Special Victims detectives.

78. As a direct and proximate result of James Roe's tortious conduct and crimes, which all
Defendants knowingly, intentionally and/or recklessly aided, abetted, and facilitated,  John Doe
and similarly situated victims of RM Media's platform have in the past suffered, and in the future
will continue to suffer, substantial damages, including damages from physical and psychological
injury, extreme emotional distress, humiliation, fear, psychological  trauma, loss of dignity and
self-esteem, and invasion of her privacy.

79. Even after the Chapter 130 Crimes were reported to RM Media, they knowingly provided
substantial assistance to James Roe's tortious conduct. That knowing substantial assistance
went beyond mere  knowledge and approval of James Roe's wrongdoing as both assailant and
victim. For example, RM Media knowingly and intentionally allowed James Roe continued access
to its masseur platform even though it was made aware of James Roe's conduct–a fact that RM

[14]

Media knew.

80. RM Media and all Defendants knowingly, intentionally and or recklessly committed both substantial acts in support of the child sex trafficking venture and substantial deliberate omissions in support of the venture. For example, RM Media refused to remove 15 year old James Roe from its platform, and JP Morgan omitted to take important steps (such KYC) that substantially assisted James Roe and RM Media to commit his crimes against John Doe and other users of RM Media's platform in violation of New York Penal Law Chapter 130.

81. In aiding, abetting, and facilitating James Roe's intentional tortious conduct and crimes, all Defendants could readily foresee direct and proximate injury to John Doe and should have foreseen direct and proximate injury from its actions and inactions to John Doe, and to James Roe as victim of child sex trafficking.

82. In aiding, abetting, and facilitating James Roe's tortious conduct and crimes, all Defendants committed intentional torts directed against John Doe. All defendant's aiding, abetting, and facilitating James Roe's tortious conduct and crimes were its own wrongful acts and omissions. All Defendants had a duty not to commit tortious conduct and crimes—specifically aiding, abetting, and facilitating New York sex crimes as described above— directed against John Doe.

83. As a result of the foregoing, all Defendants are liable civilly for damages they directly, tortiously, and criminally caused to John Doe. John Doe according is entitled to bring a cause of action for damages for physical, psychological, or other injury or condition suffered as a direct and proximate result of JP Morgan's aiding, abetting, and facilitating James Roe's tortious conduct and crimes described above and for damages for physical, psychological, or other injury or condition suffered as a direct and proximate result of James Roe's tortious conduct and crimes.

84. By virtue of acting intentionally, outrageously, and with a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, all Defendants are liable to John Doe for punitive damages.

## COUNT II
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

85. Plaintiff realleges and incorporates the previous as if fully set forth in this Count.

86. As a direct and proximate result of aiding, abetting, and facilitating James Roe's tortious conduct and sex crimes in violation of Chapter 130, all Defendants intentionally inflicted emotional distress against Doe.

87. All Defendant's action and inactions, described above, constitute extreme and outrageous conduct that shocks the conscience.

88. All Defendants intended to cause, and did cause, Doe's severe emotional distress. At the very least, all Defendants recklessly disregarded a substantial probability that its actions in aiding, abetting, and facilitating sex crimes would cause Doe severe emotional distress.

89. Because Defendants intentionally inflicted extreme emotional distress on Doe, they are liable to Doe for damages he suffered as a direct and proximate result.

90. As a direct and proximate result of all Defendant's conduct, Doe has in the past and will in the future continue to suffer substantial damages from psychological and physical injury, including extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self esteem, and invasion of privacy.

91. All Defendant's aiding, abetting, and facilitating of Roe's sex crimes in violation of Chapter 130 directly and proximately caused Roe's sex crimes.

92. By virtue of acting intentionally, outrageously, and with a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations, all Defendants are liable to Doe for punitive damages.

## COUNT III
## NEGLIGENT FAILURE TO EXERCISE REASONABLE CARE TO PREVENT PHYSICAL HARM

93. Plaintiff Doe realleges and incorporates by reference all paragraphs as if fully set forth in this Count.

94. In addition to any duties that might arise as consumer institutions, all Defendants owed a duty to Doe to exercise reasonable care to avoid conduct that created a risk

of  physical harm to him.  All Defendant's

duties included a duty to exercise reasonable care to  avoid  conduct  that  would  combine  with

James Roe's crimes,  and  permit  Roe's crimes, in violation of Chapter 130.

95. JP Morgan's own conduct in providing financial and other support for this sex trafficking venture s

et forces in motion that directly and proximately

injured and caused  physical  harm to Doe. These  forces that JP Morgan set in motion caused Ja

mes

Roe's intentional tortious conduct  and  Chapter  130  Crimes  against  Doe,  causing physical har

m and in themselves constituted physical harm to Doe. All Defendants owed

Doe a duty not to set those forces in motion because they unreasonably created a risk of physical

harm.

96. All

Defendants  reasonably could foresee, and did in  fact  foresee, that its  negligent failure to preve

nt physical harm would result in physical harm to Doe. All Defendants

owed a duty to prevent that physical harm.

97. All Defendants

failed  to  act  objectively  reasonably  in  failing  to  take  precautions to prevent James

Roe's intentional tortious conduct and RM Media's sex-trafficking

and  sex crimes in violation of Chapter 130, which were committed against Doe 1. If  even one

Defendant

had  acted  reasonably to  prevent  physical  harm, it would not have supported and allowed Jam

es Roe's tortious conduct and RM Media's sex trafficking  and  sex  crimes to  occur.  All

Defendants owed Doe a duty to act objectively reasonably.

98. All Defendant's breaches of its legal duties were the direct—i.e., the but for—

cause  of  physical  and  psychological  injuries  to  Doe. Without these

breaches of legal duties, those injuries would not have occurred.  The injuries that occurred were

readily foreseeable to Defendants.

99. Doe  was  easily  within  the  zone  of  foreseeable harm from the

Defendant's negligent acts and omissions.  Defendant's

negligent acts and omissions foreseeably created substantial risk of James Roe and RM creating

the space for and/or committing sex crimes.

100.       Because of al;l Defendant's failure to prevent or resolve the

physical harm to Doe it is liable to Doe for damages suffered as a direct and proximate result.

101.       As a direct and proximate result of all Defendant's

negligent failure to prevent physical harm, Doe has in the past in will

in the future continue to suffer substantial damages

from psychological and physical injury, including extreme emotional distress, humiliation, fear,

psychological trauma, loss of dignity and self-esteem, and invasion of privacy.

102.       By virtue of acting intentionally, outrageously, and with a high degree of moral turpitude

and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligation

s, all Defendants are liable to Doe for punitive damages.

## COUNT IV

## KNOWING BENEFICIARY IN A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a)(2), 1595

103.       Plaintiff Doe realleges and incorporates by reference all

paragraphs as if fully set forth in this Count.

104.       All Defendants knowingly and intentionally benefitted from participating

in, assisting, supporting, and facilitating an illegal coercive sex-

trafficking venture that was in and affecting interstate and foreign commerce, together and with o

thers, in violation of 18 U.S.C. § 1591(a)(2) sex-trafficking venture.

105.       By taking the concrete steps outlined above (along with the others alleged in this c

omplaint), all Defendants knowingly participated in sex trafficking and furthered the sex-

trafficking venture. The concrete steps above constituted taking part in the sex-

trafficking venture and were necessary for its success. The concrete steps above constituted act

ive engagement by RM Media in this sex trafficking venture. RM Media had actual knowledge

that James Row was a minor, as employs identity verification methods to approve new masseurs

to its platform and to charge these masseurs a monthly platform charge.

106.     All Defendants

knowingly and intentionally benefited financially from  their participation in the sex-

trafficking venture, with  knowledge, or its reckless disregard of the fact that

force, threats  of force,  fraud,  coercion,  and  a  combination  of  such  means to cause John Do

e injury, as well as cause James Roe to engage in commercial child sex acts.

107.     All

Defendant's knowing and intentional conduct has caused Doe serious  harm  including,  without  l

imitation,  physical, psychological, emotional, financial, and reputational harm.

108.     All Defendant's knowing and intentional conduct has caused

Doe harm that is sufficiently serious, under all the surrounding circumstances, to compel a reaso

nable person like James Roe

of the same background and in the  same circumstances to  perform  or to continue  performing c

ommercial  sexual activity.

109.     By virtue of these knowing and intentional violations of 18 U.S.C. §§  1591(a)(2), 1595, all

Defendants are liable to Doe for the damages they sustained and reasonable attorneys' fees.

110.     By virtue of these intentional and outrageous violations of 18 U.S.C. §§  1591(a)(2), 1595

, all Defendants are liable to Doe for punitive damages.


## COUNT V


## PARTICIPATING IN A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT,   18 U.S.C. §§ 1591(a)(1), 1595


111.     Plaintiff Doe

realleges and incorporates by reference paragraphs as if fully set forth in this Count.

112.     All Defendants knowingly  and  intentionally,  through  various  means,

participated in, perpetrated, assisted, supported, facilitated a sex-

trafficking venture  that was in and affecting interstate and foreign commerce, together and with o

thers,  in violation of 18 U.S.C. § 1591(a)(1).

113.     By  virtue of its  knowing  and  intentional  violations  of  18 U.S.C.  §§  1591(a)(1), 1595

, All Defendants are liable to Doe damages sustained and reasonable attorneys' fees.

114.        By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(1), 1595

, All Defendants are liable to Doe for punitive damages.

## COUNT VI

### AIDING, ABETTING, AND INDUCING A SEX-TRAFFICKING VENTURE IN VIOLATION
### OF THE TRAFFICKING VICTIMS PROTECTION ACT,   18 U.S.C. §§ 2, 1591(a)(1) & (2), 1595

115.        Plaintiff Doe realleges and incorporates by reference all

paragraphs as if fully set forth in this Count.

116.        Acting through its officers and employees, all Defendants

aided, abetted, and induced RM Media's sex-

trafficking venture that was in and affecting interstate and foreign commerce, together and with o

thers, in violation of 18 U.S.C. §§ 2, 1591(a)(1) & (a)(2).

117.        Under 18 U.S.C. § 2, all Defendants

are punishable as a principal under 18 U.S.C. §§ 1591(a)(1) & (a)(2) and thereby committed and

perpetrated violations of Chapter 77, Title 18, U.S. Code, when it aided, abetted, procured,

and induced RM Media's sex-trafficking venture and sex trafficking of James Roe and the

resultant injury to John Doe.

118.        Under 18 U.S.C. § 2, all Defendants

committed and perpetrated crimes in violation of 18 U.S.C. §§ 1591(a)(1) & (a)(2) by aiding,

abetting, and inducing RM Media's sex-trafficking venture and sex trafficking of James Roe

and the consequences to John Doe.

119.        Doe is a victims of all Defendant's criminally aiding, abetting, and inducing

violations of 18 U.S.C. §§ 1591(a)(1) & (a)(2).

These actions were in and affecting interstate and foreign commerce.

120.        All Defendant's through its officers and employees

had actual knowledge that they were aiding, abetting, and inducing sexual abuse and sex traffick

ing. All defendants knew or should have known that they were

engaged in acts in violation of the TVPA.

121.     Despite such knowledge, all Defendants intentionally provided for, paid for and aided, abetted, procured, and induced this child sex trafficking co-conspiracy in violations of 18 U.S.C. §§ 1591(a)(1) & (a)(2), which constituted perpetrating violations of those laws under 18 U.S.C. § 2. All Defendants knew, and acted in reckless disregard of the fact that, through coerce, defraud, and force James Roe engaged in commercial sex acts to the detriment of John Doe and others.

122.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1591(a)(1), 1595, all Defendants are liable to Doe for the damages sustained and reasonable attorneys' fees.

123.     By virtue of these intentional and outrageous violations of 18 U.S.C. §§ 1591(a)(1), 1595 , all Defendants are liable to Doe for punitive damages.

## COUNT VII

## ATTEMPT TO COMMIT VIOLATIONS OF THE TRAFFICKING VICTIM PROTECTION ACT, 18 U.S.C. §§ 1594(a), 1591, 1595

124.     Plaintiff Doe realleges and incorporates by reference all paragraphs as if fully set forth in this Count.

125.     RM Media and all Defendants intentionally attempted to violate 18 U.S.C. § 1591(a)(1) and (a)(2), and to further the child -trafficking venture to coerce commercial sex acts from James Roe at the detriment of John Doe, all in violation of 18 U.S.C. § 1594(a).

126.     All Defendant's officers and employees deliberately took substantial steps to attempt to violate 18 U.S.C. § 1591(a)(1) & (a)(2) within this District.

127.     All Defendants deliberately took substantial steps toward attempting to violate 18 U.S.C. § 1591(a)(1) & (a)(2), by providing substantial support for the child sex-trafficking venture.

128.      All Defendant's attempt to violate the TVPA by furthering the child sex trafficking

venture was intentional and willful and, therefore, all Defendants

intentionally and willfully caused the

commission of sexual abuse and commercial sex acts against James Roe and John

Doe through its affirmative and overt acts supporting the venture.

129.      All Defendants

knew and acted in reckless disregard of the fact, that its acts and conduct in support

and facilitation of child trafficking would lead to sexual abuse and

unlawful coercive commercial sex acts.

130.      In addition to acting intentionally and with knowledge that they were supporting a sex-

trafficking venture, all Defendants benefited financially from attempting to participate in the sex-

trafficking venture which all Defendants knew or

should have known that had engaged in coercive sex trafficking in violation of 18 U.S.C. § 1591(

a)(1) & (a)(2).

131.      RM Media's criminality also evinces a

high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal

indifference to civil obligations.   RM Media's

criminal attempt was directed specifically at James Roe and John Doe.

132.      All Defendant's conduct

has caused Doe serious harm, including, without limitation, physical, psychological, financial, and

reputational harm. This harm was a direct, proximate, and foreseeable result of all Defendant's

and their employee's attempts in violation of 18 U.S.C. § 1594(a).

133.      By virtue of these violations of 18 U.S.C. § 1594(a), all Defendants are liable to

Doe for the damages sustained and reasonable attorneys' fees under 18 U.S.C. § 1595.

134.      By virtue of their intentional and outrageous attempt to violate 18 U.S.C. § 1594(a), all

Defendants are liable to Doe and others affected in the same class for

punitive damages under 18 U.S.C. § 1595.


## VIII. REQUEST FOR RELIEF

John Doe respectfully requests that the Court enter judgment in his favor, and against all Defendants, as follows:

a.  That the Court award Plaintiff compensatory, consequential, general, nominal, and punitive damages against Defendants in an amount to be determined at trial;

b.  That the Court award punitive and exemplary damages against Defendants in an amount to be determined at trial;

c.  That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

d.  That the Court award pre- and post-judgment interest at the maximum legal rate; and

e.  That the Court grant all such other and further relief as it deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a **TRIAL BY JURY** on all matters for which there is a right to a jury trial.

Dated:  New York, NY

June 20, 2023

Respectfully Submitted,

/s/ John Doe

John Doe (pro se)

jddoe591@gmail.com